**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| JOSUE ROMERO, on behalf of himself and all others similarly situated, | : | Civil Case No.: 1:20-cv-07422 (JMF) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| ADAGIO TEAS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

## TABLE OF CONTENTS

**Pages**

I.    PRELIMINARY STATEMENT…………………………………………………1

II.   PROCEDURAL HISTORY………………………………………...………3

III.  STATEMENT OF FACTS…………………………………………………… 3

IV.  LEGAL STANDARDS….……………………………………………… 7

        a.  The Use of Extrinsic Evidence in Deciding a
            Rule 12(b)(1) Motion to Dismiss……………………………….…..8
        b.  Conversion of a Motion to Dismiss to a Rule 56 Motion for
            Summary Judgment…………………………………………… 9
        c.

V.   ARGUMENT………………………………………………………… 11

   A.  Because of the Nature of Defendant's Rule 12(B)(1) Challenge, Defendant's Motion to
       Dismiss Should be denied…………………………………………...11

   B.  Because Defendant Has Failed to Demonstrate Sufficient Grounds for Dismissal of the
       Federal ADA Claim Asserted by the Amended Complaint, the State and New York
       City Law Claims Must be Sustained……………………...……………….. 25

VI.  CONCLUSION…………………………………………...……...………………… 25

ii

## <u>TABLE OF AUTHORITIES</u>

<u>**Pages**</u>

**Cases**

*Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF),
2020 U.S. Dist. LEXIS 230272 (S.D.N.Y. Dec. 8, 2020) ................................................. 11

*Aguilar v. Immigration & Customs Enf't Div. of the United States
Dep't of Homeland Sec.*, 811 F. Supp. 2d 803 (S.D.N.Y. 2011)....................................... 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 10

*Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF),
2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020) ……………….… …………..… 8,9

*Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436 (2d Cir. 2019)............................ 17

*Camacho v. Vanderbilt Univ.*, 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019) .............. 14,15

*Campbell v. Greisberger*, 80 F.3d 703 (2d Cir. 1996)...................................................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 10

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94(2d Cir. 2010) ................. 9

*Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE),
017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) .................................................................... 12

*Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019)..................................... 12

*Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013)……………..8,17

*Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006) ............. 8,17

*Evans v. SSN Funding, L.P.*,
2017 U.S. Dist. LEXIS 135864 (S.D.N.Y. Aug. 23, 2017)………………………..…..8,25

*Feltzin v. Clocktower Plaza Properties, Ltd.*,
2018 WL 1221153 (E.D.N.Y. Mar. 8, 2018)................................................................... 14

*Foresta v. Centerlight Capital Mgmt., LLC*, 379 F. App'x 44 (2d Cir. 2010)… ............… 2

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000).  .................................................. 9

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ……………………………………...……… 7

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) ................................................................ 12

*Halebian v. Berv*, 548 F. App'x 641 (2d Cir. 2013)......................................................... 20

*Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC),
2019 WL 2343306 (S.D.N.Y. June 3, 2019) ................................................................... 15

*Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298 (2012).................................... 9

*London v. Polishook*, 189 F.3d 196 (2d Cir. 1999) ................................................. 8,17,21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................... 10

*Phillips v. 180 Bklyn Livingston, LLC*,
2017 U.S. Dist. LEXIS 75154 (E.D.N.Y. May 16, 2017) ................................................. 8

*Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF),
2015 U.S. Dist. LEXIS 43061 (S.D.N.Y. Mar. 31, 2015) ............................................... 16

*Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016). ............... 14

*Segarra v. Delta Airlines, Inc.*, 2020 WL 3127879 (S.D.N.Y. June 12, 2020) ........... 10,21

*Simpson v. Wells Fargo Bank*, No. 15-CV-1487 (JMF),
2016 U.S. Dist. LEXIS 11507 (S.D.N.Y. Feb. 1, 2016) ................................................... 9

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016)  ....................... 9

*Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO),
2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) ................................................................ 12

*Takeda Chem. Indus. v. Watson Pharm., Inc.*,
329 F. Supp. 2d 394 (S.D.N.Y. 2004) ........................................................... 8, 17, 21, 25

*U.S. ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
2020 U.S. Dist. LEXIS 122747 (E.D.N.Y. July 13, 2020).............................................. 20

*Vivenzio v. City of Syracuse*, 611 F.3d 98, (2d Cir. 2010)............................................... 10

*Walters v. Simply Skinny Ties, LLC*, 2020 WL 7248346, (N.D.N.Y. Dec. 9, 2020) ........ 13

*Wilson v. HSBC Bank, USA*,
2020 U.S. App. LEXIS 34265, (2d Cir. Oct. 29, 2020)…………..………..………………8

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438  (S.D.N.Y. 2018) .................................... 12

**Statutes**

42 U.S.C. § 12181 *ET SEQ.* .......................................................................................... 7

**Rules**

FED. R. CIV. P.  12(b)(1), 12(b)(6), 56.............................................................. *passim*

Plaintiff Josue Romero ("Plaintiff") respectfully submits this memorandum of law in opposition to Adagio Teas, Inc.'s ("Defendant") motion to dismiss and supporting documents ("Motion to Dismiss").[1]

## I.   PRELIMINARY STATEMENT

The Amended Complaint properly pleads all of the necessary elements for an ADA website accessibility claim and, for many reasons, this Court has subject matter jurisdiction over Plaintiff's viable and well-pled claims.

Defendant is at a minimum haphazard in how it presents and labels its motions. At first, Defendant characterized its original motion to dismiss as a F.R.C.P. 12(b)(1) motion, but then proceeded to include mostly F.R.C.P. 12(b)(6) arguments as to how the initial complaint failed to properly plead a claim under *Twombly/Iqbal*. Defendant's current motion to dismiss abandons some of the 12(b)(6) arguments raised in its original motion *in a tacit concession that the Amended Complaint cured* purported pleading deficiencies found in the initial complaint.

Yet, Defendant overreaches in its current Motion to Dismiss, which *once again* is mischaracterized. To be sure, Defendant's current motion guises as a strictly F.R.C.P. 12(b)(1) motion, but in reality it requests adjudication of the merits and sounds like a 12(b)(6) motion. But their motion also includes extrinsic evidence, and is really a premature *motion for summary*

---

[1] As used in this motion, the term "Amended Complaint" refers to the First Amended Complaint filed in this action on January 15, 2021 (ECF No. 18), and "Def. Mem." refers to Defendant's Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (ECF No. 20).

*judgment* under F.R.C.P. 56 – and should be respectfully converted into one by the Court.[2]  Their motion clearly requests that the Court weigh the evidence and factual record and asks the Court to find that no genuine issues of material fact exist as to two legal issues: standing and mootness.

While it's true that courts permit an amount of extrinsic evidence on 12(b)(1) motions, this is not one of those cases, as the evidence to be considered intertwine inextricably with the merits of the case.  Defendant here even sought to (improperly) file a letter with the Court seeking the Courts guidance on whether evidence it planned to submit would be considered in the early stages; the Court rejected Defendant's improper request for an advisory opinion and stated that "[t]he Court will not give advance guidance to Defendant on its anticipated motion." *See* ECF No. 12.

Defendant's supporting declarations that it introduces in its motion should be afforded little value, as they are untested and unchallenged opinions at this stage – no discovery has commenced and Plaintiff has not had the opportunity to depose these witnesses.  Not only that, these declarations are disproven based on Plaintiff's website experience – *i.e.*, his inability to enjoy the website as other non-disabled  consumers – as sufficiently detailed in the Amended Complaint.  At the motion to dismiss stage these allegations must be taken as true and any inferences are to be found in his favor. In the end, and focusing on just one of the myriad barriers Plaintiff faced, Plaintiff's disability, his blindness, was the sole reason he was unable to recognize, enjoy, nor redeem a $5 coupon afforded to other consumers. Amended Complaint at ¶¶4(a), 27(a).

To even further bolster his allegations (and in an abundance of caution), Plaintiff retained

---

[2] *See Foresta v. Centerlight Capital Mgmt., LLC*, 379 F. App'x 44, 46 n.1 (2d Cir. 2010) ("Although defendants moved to dismiss pursuant to Rule 12(b)(1), the District Court properly noted that the "the threshold number of employees . . . is not a jurisdictional issue." Accordingly, the District Court appears to have treated defendants' Rule 12(b)(1) motion as a mislabeled motion to dismiss pursuant to Rule 12(b)(6), and to have converted that motion into a motion for summary judgment in accordance with Rule 12(d). We find no error in that procedure.")

an expert who: (i) went onto the website very recently, (ii) experienced the same website accessibility issues Plaintiff experienced (*inter alia*, the $5 coupon was not picked up by the screen reading software); and (iii) totally discredits Defendant's expert. *See* Declaration of Robert A. Moody filed in support of this opposition brief.  This "battle of the experts" screams Rule 56 – demanding adjudication only at summary judgment following the opportunity for full discovery, not at the nascent stages under Rule 12.

Defendant has not met its burden under Rule 12(b)(1), Rule 12(b)(6) or under Rule 56.  The Court has subject matter jurisdiction over this case because the accessibility barriers experienced by Plaintiff still exist on the website, and because Plaintiff has satisfied the relatively low threshold for standing – the Amended Complaint clearly alleges that Plaintiff would return to buy the teas and teaware he originally sought to purchase once the accessibility barriers are cured.  Amended Complaint at ¶¶5, 29. This case should proceed to discovery, or should possibly even proceed straight to trial, but it is respectfully premature to dispose of this action during these beginning stages.

Accordingly, Defendant's motion should respectfully be denied.

## II.    PROCEDURAL HISTORY

On September 10, 2020, Plaintiff filed the initial complaint in this action (ECF No. 1, the "Initial Complaint").  On December 21, 2020, Defendant filed a motion to dismiss the Initial Complaint (ECF No. 13).  Plaintiff then filed the Amended Complaint on January 15, 2021 in accordance with this Court's December 22, 2020 Order (ECF No. 17).  The motion followed.

## III.    STATEMENT OF FACTS

Defendant is a tea manufacturer and retail company that owns and operates the website

www.adagio.com (the "Website"), through which it offers goods and services for online sale and general delivery to residents of the State of New York. Amended Complaint at ¶21. By way of its Website, Defendant offers the following goods and services to the general public: the ability to browse various teas and teaware for purchase and delivery, the ability to view information related to tea clubs, the ability to obtain defendant's contact information, and the offering of goods and services related to these products and information. Amended Complaint at ¶23.

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to properly utilize his computer to access the internet. Amended Complaint at ¶¶ 1, 24. Plaintiff made numerous attempts to access Defendant's Website, the last of which occurring in August 2020, during which Plaintiff browsed and attempted to transact business on Defendant's Website. Amended Complaint at ¶¶ 4, 26. Plaintiff accessed Defendant's Website in order to, *inter alia*: (i) understand the different product details for the products offered on the Website by, for instance, listening to audio descriptions of the images on the Website, and (ii) purchase specialty teas and teaware while Defendant still promoted a $5 savings coupon. Amended Complaint at ¶4. However, when accessing the Website, Plaintiff encountered numerous access barriers for blind or visually-impaired people, including, without limitation (collectively, the "Access Barriers"):

  a. a promotional "Saving Coupon $5 off" coupon that Plaintiff sought to use and submit at the time of purchase was and remains inaccessible, as there was/is no indication on the screen-reader that a pop-up is on the screen (stated differently, screen readers are unable to interpret the Pop-Up and the user will miss the promotion and discounts that are being offered), which caused the savings benefit provided to standard

consumers to be not afforded to Plaintiff and other visually impaired consumers;

b.  the website did/does not allow the visually impaired – and did not permit Plaintiff – to properly transact business and understand the "shopping bag" feature, which serves as the only way for the blind to proceed to virtually "checkout" and purchase products. Specifically, Plaintiff was unable to understand the price of the items he put in the "shopping bag" because the option to add the products to the bag was mislabeled and unable to be interpreted with the screen reader;

c.  once Plaintiff did place certain items into his shopping bag, he was unable to access key information about the products, as the website was designed to gray out the main screen to present the "shopping bag" screen. Once that occurs/occurred, the information located within the shopping bag was not recognized by Plaintiff's screen reader, but only the information from the main screen was read aloud, barring Plaintiff from completing his purchase transactions;

d.  the Website did not properly label the product details and these details could not be understood by the screen reader. Plaintiff was unable to understand key information about the products he sought to purchase, including the nutritional facts of the products;

e.  the lack of Alternative Text ("alt-text"), an invisible code embedded beneath a graphical image on a website;

f.  empty links that contain no text causing the function or purpose of the link to not be presented to the user, thereby causing confusion to screen-reader users;

g.  redundant links, *i.e*., adjacent links go to the same URL address, which resulted in

additional navigation and repetition for screen-reader users;

h.    the company logo on the Website, which typically acts as a link designed to take the user from wherever they may be within the Website to the homepage of that site, was not operating properly as it was not properly labeled, causing confusion and preventing the visually impaired from interpreting the logo/link (effectively hiding the link's purpose from the user); and

i.    site element like text is not labeled properly to integrate with a screen reader and some text is skipped over, preventing the user from thoroughly understanding the text and preventing the screen reader from operating properly.

Amended Complaint at ¶27.

The Access Barriers have prevented blind and visually-impaired customers such as Plaintiff, who need screen-readers, from fully and equally using or enjoying the facilities, products, and services Defendant offers to the public on its Website. Amended Complaint at ¶30. While Plaintiff was highly interested in purchasing the specialty teas offered by Adagio as they are moderately priced relative to other high-end teas offered in the market (Amended Complaint at ¶29), the Access Barriers prevented Plaintiff from enjoying and purchasing the products offered by Defendant on its Website to the same extent offered to sighted individuals. Amended Complaint at ¶30. In particular, the Access Barriers prevented Plaintiff from (i) using the $5 off limited time promotional coupon, (ii) properly using the "shopping bag" feature, (iii) understanding the price and other key information for products he attempted to purchase, (iv) understanding product details on the Website, and (v) understanding the descriptions of images on the site. Amended Complaint at ¶4.

6

Many of the Access Barriers still existed on the Website as of the date of filing of the Amended Complaint.  Amended Complaint at ¶5.  Further, in preparing this opposition, counsel for Plaintiff retained the services of Robert D. Moody, President, CEO and Founder of Forensic Data Services (d/b/a FDS Global) in order to corroborate the existence of any of the alleged Access Barriers on the Website.  Based on Mr. Moody's analysis, the Website still did not meet the Web Content Accessibility Guidelines version 2.1 AA as of February 18, 2021.  *See* Moody Declaration at ¶9.  Further, as demonstrated by the Mr. Moody's Declaration, many of the alleged Access Barriers still existed as of February 18, 2021.  *See* Moody Declaration at ¶10-11.

Based on this, the Amended Complaint adequately alleges (i) Defendant's violations of 42 U.S.C. § 12181 *et seq*. –Title III of the ADA (First Cause of Action); Defendant's violations the New York State Human Rights Law, N.Y. Exec. Law Article 15 (the "NYSHRL") (Second Cause of Action), Article 4 of the New York State Civil Rights Law (the "NYSCRL") (Third Cause of Action), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. (the "NYCHRL") (Fourth Cause of Action).  Additionally, the Complaint seeks Declaratory Relief related to such violations (Fifth Cause of Action).

## IV.   <u>LEGAL STANDARD</u>

The Second Circuit cautions courts from prematurely dismissing complaints of civil rights violations.  *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).  "In reviewing a motion to dismiss under Rule 12(b)(1), a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it. The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (citations and quotations omitted).

### A.  The Use of Extrinsic Evidence in Deciding a Rule 12(b)(1) Motion to Dismiss

"In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings." *Wilson v. HSBC Bank, USA*, No. 19-920-cv, 2020 U.S. App. LEXIS 34265, at *2 (2d Cir. Oct. 29, 2020) (citations omitted).  However, where the 12(b)(1) challenge to jurisdiction "is 'so intertwined with the merits that its resolution depends on the resolution of the merits,' the court should use the standard 'applicable to a motion for summary judgment' and dismiss only where 'no triable issues of fact' exist." *Takeda Chem. Indus. v. Watson Pharm., Inc*., 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (*citing London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999)); *see also Evans v. SSN Funding, L.P.*, 2017 U.S. Dist. LEXIS 135864, at *15-16 (S.D.N.Y. Aug. 23, 2017) (holding same).

The overlap of evidence submitted in support of a Rule 12(b)(1) motion "is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 88 (2d Cir. 2006); *see also Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013). [3]

To establish an injury-in-fact sufficient to support Article III standing, "a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized

---

[3] This case should go to a jury, as the state law claims demand jury adjudication. *Phillips v. 180 Bklyn Livingston, LLC*, 2017 U.S. Dist. LEXIS 75154, at *6 (E.D.N.Y. May 16, 2017) (where plaintiff filed claims under Title III of the ADA, New York State Human Rights Law ('NYSHRL'), and the New York City Human Rights Law ('NYCHRL'). "Here, the state claims would consume the federal ADA claims. First, as a practical matter, the ADA does not provide for a jury trial, whereas the state and city claims do. The preparation of a case for a jury trial requires far more resources than a trial being put to a judge alone.")

and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way…[a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract.  Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

The "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  The Second Circuit applies a two-part test to determine whether a defendant's voluntary cessation has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

**B.  Conversion of a Motion to Dismiss to a Rule 56 Motion for Summary Judgment**

"Where materials outside the pleadings are presented on a motion to dismiss, a court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). The court has broad discretion to convert a motion to dismiss into a summary judgment motion. See *Simpson v. Wells Fargo Bank*, No. 15-CV-1487 (JMF), 2016 U.S. Dist. LEXIS 11507, at *4 (S.D.N.Y. Feb. 1, 2016) (this Court converted 12(b)(6) motion to a motion for summary judgment where "[b]oth parties submitted extrinsic evidence in support of their respective positions regarding the [defendant's] motion to dismiss, indicating that both parties understood that the motion to

dismiss might be converted into one for summary judgment.").

On a motion for summary judgment, the moving party bears the burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The factual dispute must be relevant or necessary. *Id.*

"The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden shifts to the non-movant to present evidence sufficient to satisfy every element of the claim." *Segarra v. Delta Airlines, Inc.*, 2020 WL 3127879, at *2 (S.D.N.Y. June 12, 2020). The non-movant must present specific facts and evidence on which the jury could reasonably rule in his/her favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 252.

On summary judgment, the Court views the facts in the light most favorable to the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). The court must also resolve all ambiguities, and credit all factual inferences that could be drawn, in the nonmoving party's favor. *Id*. "The Court's job is not to 'weigh the evidence or resolve issues of fact.'" *Segarra*, 2020 WL 3127879, at *2 (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Id*. Thus, "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

## V.   <u>ARGUMENT</u>

## A.  BECAUSE OF THE NATURE OF DEFENDANT'S RULE 12(b)(1) CHALLENGE, DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED

Defendant's motion is based entirely on extraneous evidentiary submissions. This evidence consists of two declarations: a declaration of Michel Cramer, the CEO of Adagio Teas, Inc. (ECF. 21, the "Cramer Declaration") which, in turn, relies on further extrinsic evidence in the form of (i) Plaintiff's IP address disclosed under the confidentiality of mediation[4] (Cramer Declaration at ¶7), and (ii) Defendant's internal log file records (Cramer Declaration at ¶¶9-10, 12); and an expert declaration submitted by Giuseppina "Pina" D'Intino, an expert consultant retained by Defendant's counsel (ECF. 22, the "D'Intino Declaration").

### a.  Mootness

Defendant first argues that the Amended Complaint must be dismissed because the claims alleged in the Amended Complaint are now moot. *See generally,* Def. Mem. at 7-11.  In particular, Defendant argues that "[a]ny barriers that may have prevented Plaintiff from accessing the Website prior to filing the Complaint no longer exist, and Plaintiff's claim for injunctive relief is moot." Def. Mem. at 9.  In support of this argument, Defendant cites to the Cramer Declaration, asserting

---

[4] Defendant's disclosure of Plaintiff's communications made exclusively for the court ordered ADR mediation was entirely inappropriate, and such information should be disregarded by this Court. *See* Motion to Dismiss p. 4, n. 3; *see also* SDNY Mediation Confidentiality Agreement, dated as of May 19, 2020, found at https://www.nysd.uscourts.gov ("Any communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this agreement").  Even if, *arguendo*, information exchanged by the parties for purposes of mediation would be otherwise discoverable under the Federal Rules of Civil Procedure (a fact that Defendant has not established for the information at issue here) would not be shielded from *future* discovery merely because it is disclosed in the mediation, no provision in the SDNY Mediation Confidentiality Agreement provides for the disclosure of the nature of information exchanged by the parties in any further proceeding (nor the use of such information as an evidentiary basis to seek the dismissal of the disclosing party's pleading) without properly obtaining such information through the appropriate discovery process.  *See, e.g., Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2020 U.S. Dist. LEXIS 230272, at *14 (S.D.N.Y. Dec. 8, 2020) (Furman, J.) (noting that "disclosing confidential mediation communications would threaten the well-established public needs of encouraging settlement and reducing court dockets") (citations omitted).  Using the information without affording Plaintiff the ability to lodge any potential objection amounts to a hijacking of the confidential mediation process, and is entirely improper.

that Defendant "[h]as already invested significant resources in making the Website accessible to screen reader users and periodically evaluates the Website for compliance issues."  Def. Mem. at 10.  Defendant also cites to D'Intino Declaration to argue that "Ms. D'Intino's testing confirms that the Website is accessible via screen reader." *Id*. at 10. Thus, Defendant's mootness argument ***relies entirely*** on the assertions made in the Cramer Declaration and the D'Intino Declaration.

Because "[t]he court cannot conclude, based on the evidence before it, that Defendant has fully rectified all access barriers in the Website or that it is absolutely clear the Defendant cannot resume the allegedly offending conduct, the Court finds that Plaintiff's ADA claim is not moot, and denies Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"); *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018) (same, where defendant did "not provide any affirmative showing that its current website is ADA-compliant, and will remain that way, beyond asserting so and citing to the website itself"); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *11-12 (S.D.N.Y. Dec. 20, 2017) (same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access).

Nor do the two cases cited by Defendant support a finding that this case is moot.  In *Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019), the defendant submitted an affidavit swearing that all of the accessibility issues had been fixed, something which the *Diaz* plaintiff did not dispute. *See id.,* at *4 ("More to the point, Plaintiff does not dispute the factual assertions Mr. Whiting makes regarding Defendant's efforts at ADA compliance").  And in *Guglielmo v.*

*Nebraska Furniture Mart, Inc.*, 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020), the district court found that the case was moot because the defendant (1) had demonstrably fixed the accessibility issues, and (2) the defendant simply did not ship furniture orders from Nebraska into New York, so the *Guglielmo* plaintiff could not have been harmed in the first place. *See id.,* at *5.

    In neither of those two cases did the accessibility issues identified in the Complaint continue to persist. *See* Moody Declaration. Here, by contrast, there is a justiciable claim here as to whether or not the Defendant's website provides the same browsing experience to visually-impaired individuals as it does to sighted individuals. Thus, Defendant cannot possibly have met its burden of showing that this case is moot, and the Motion to Dismiss must be denied. *See, Walters v. Simply Skinny Ties, LLC,* 2020 WL 7248346, at *4 (N.D.N.Y. Dec. 9, 2020) (denying motion to dismiss ADA website case because "(1) Walters has established that there is a factual dispute between the parties over whether the website continues to deny him a full and equal opportunity to enjoy the services it provides and (2) DAZI has not conclusively established that this dispute has been mooted by its voluntary conduct").

### b.  *Standing*

    Defendant next argues that Plaintiff lacks the requisite standing to pursue the claims alleged in the Amended Complaint. Def. Mem. at 11-14. Once again, Defendant cites to the Cramer Declaration repeatedly in support of this argument. Arguing first that Plaintiff cannot meet his burden to show a past injury, Defendant asserts that the Amended Complaint's allegations concerning the Access Barriers "[a]re contradicted by [Defendant]'s Website records, which show that Plaintiff spent about eight minutes browsing the Website on August 25, 2020, visiting multiple product pages and adding three items to his cart." Def. Mem. at 12-13. Defendant then cites to

the Cramer Declaration to assert that "[Defendant's] log files [Plaintiff]'s August 25, 2020 visit suggest that his onsite behavior would not have activated the coupon" in a further attempt to demonstrate a lack of past injury.  Def. Mem. at 13.

In the ADA context, courts have found "standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location." *Id.* at 187-88.  The courts have also held that "in reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019); *Feltzin v. Clocktower Plaza Properties, Ltd.*, 2018 WL 1221153, at *3 (E.D.N.Y. Mar. 8, 2018); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016).

In this case, Mr. Romero specifically identified how he was trying to browse the Defendant's online store, but was prevented from doing so because of the Website's incompatibility with his screen-reading software.  Romero specifically also detailed his intent to return to the Website once it is made accessible.   The Amended Complaint specifically alleges that Plaintiff would still like to return to the Website to browse and potentially purchase products once it is made accessible to him, and intends to do so once the site is made accessible.

Under these facts, it is clear that Mr. Romero passes the "low threshold" for standing.  In *Camacho v. Vanderbilt Univ.*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y. Dec. 4,

2019), Judge Failla held that the ADA plaintiff had standing to sue because of similar accessibility

issues with a website:

> Plaintiff has sufficiently alleged each of the three factors necessary to find standing under the ADA. First, Plaintiff claims that he suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188.

> *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9.

In *Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC), 2019 WL 2343306

(S.D.N.Y. June 3, 2019), the court similarly found that an ADA plaintiff who has been denied equal

access to a website properly stated a claim, under very similar allegations.  In that case, the court

rejected a motion to dismiss, where:

> as alleged in the Complaint, Plaintiff was not able to browse Defendant's website and make a reservation with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms. Plaintiff was unable to discern the accessible features of rooms that would meet her needs. Defendant's website did not provide Plaintiff with the opportunity to evaluate the suitability of common areas and the amenities Defendant provides to its guests. Taking the facts in the Complaint as true, it is plausible that, at the time Plaintiff visited Defendant's website, it was not compliant with the ADA as interpreted by the DOJ.

> *Juscinska v. Paper Factory Hotel, LLC*, 2019 WL 2343306, at *3.

Finally, arguing that Plaintiff cannot establish a threat of repeated injury, Defendant cites to

the D'Intino Declaration, purportedly demonstrating that D'Intino "was able to understand price

and product information when browsing the Website and properly use the shopping cart when she

tested the Website with a variety of screen reader / browser combinations" after the filing of the

Initial Complaint, and that D'Intino "was able to discern and claim [Defendant]'s pop-up coupon with her screen reader."  Def. Mem. at 13.

Other than a reference to two factually distinguishable cases concerning the intent to return standard and an attempted (and incorrect) inference from the Amended Complaint concerning whether or not Plaintiff attempted to access the Website after Defendant filed its motion to dismiss the Initial Complaint, once again, Defendant bases the entirety of its argument on the Cramer Declaration and the D'Intino Declaration.

Accordingly, the court has subject matter jurisdiction and Defendant's motion must be denied. *See Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 U.S. Dist. LEXIS 43061, at *6 n.2 (S.D.N.Y. Mar. 31, 2015) (this Court denied 12(b)(1), stating "In addition to arguing that Plaintiff fails to state a claim, Defendants move to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)…that those claims may ultimately fail does not deprive the Court of jurisdiction.").

      i.    <u>Because Resolution of Defendant's 12(b)(1) Jurisdictional Challenge Depends on the Resolution of the Merits, the Court Must Reserve the Determination of these Challenges for Trial.</u>

In support of its mootness argument, Defendant cites to the Cramer Declaration asserting that no barriers that may have prevented Plaintiff from accessing the Website prior to filing the Complaint currently exist, and Defendant cites to the D'Intino Declaration asserting that the Website is accessible via screen reader.  Def. Mem. at 9-10.  In support of its lack of standing argument, Defendant cites to the Cramer Declaration and the D'Intino Declaration to demonstrate how Defendant's internal records allegedly contradict Plaintiff's allegations concerning his inability to properly use the Website due to the Access Barriers.

Although Defendant is generally within its right to bring extrinsic evidence in support of its Rule 12(b)(1) motion (*Wilson v. HSBC Bank*), Defendant's narrative created by such evidence strikes at the heart of Plaintiff's claims and sounds in Rule 12(b)(6).  The very merits of the case rest on whether the Access Barriers existed when Plaintiff attempted to access the Website in August and/or still exist currently and what Plaintiff did in an attempt to complete a transaction on the Website.  By challenging these allegations in an attempt to attack subject matter jurisdiction, Defendant has thus intertwined its jurisdictional challenge with the merits of the case.  Because fact-finding on these jurisdictional issues will necessarily adjudicate the factual issues at the heart of the Plaintiff's claims, which are required by the Seventh Amendment to be resolved by a jury, the Court must leave the jurisdictional issues for trial. *See All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 88 (2d Cir. 2006); *see also Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 87 (2d Cir. 2013); *Aguilar v. Immigration & Customs Enf't Div. of the United States Dep't of Homeland Sec*., 811 F. Supp. 2d 803, 822 (S.D.N.Y. 2011); *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d Cir. 2019).

     ii.    <u>Although Defendant's Motion to Dismiss Should be Determined Under a Summary Judgment Standard, This Court Should Defer Such Determination as Premature</u>.

Because Defendant's jurisdictional challenge is heavily intertwined with the merits of the case, the Court is required to analyze Defendant's Motion to Dismiss under a Rule 56 summary judgment standard.  *See, e.g.*, *Takeda Chem. Indus.*, 329 F. Supp. 2d 394, 402 (*citing London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999).  However, Plaintiff has not had the opportunity to conduct any discovery in support of Plaintiff's claims or to investigate the validity of Defendant's asserted evidence.  For instance, Plaintiff has not had an opportunity to challenge the matters attested to by Mr. Cramer, including, without limitation, the following:

i.    his oversight of the "creation of policies and procedures to ensure that the Website is accessible to blind and visually impaired users" (Cramer Declaration at ¶2) and any additional discovery to determine the exact nature of such policies and procedures.

ii.    Defendant's "[t]esting that we performed on our home, category, product and checkout pages both before and after August 25, 2020 confirmed our compliance with the WCAG 2.1 accessibility guidelines" (Cramer Declaration at ¶2), and any additional discovery to determine how the testing confirmed such compliance.

iii.    While Mr. Cramer attests that he "[r]eviewed the accessibility functions of the Website with [Defendant]'s information technology team and an outside accessibility consultant" and "[c]onfirmed that none of the programming errors alleged in [Plaintiff]'s complaint could have impeded his access to the Website" (Cramer Declaration at ¶6), Plaintiff has not been afforded an opportunity to depose Mr. Cramer or conduct any additional discovery to determine the details of Mr. Cramer's purported review, or how exactly the review confirmed that none of the alleged programming errors could have impeded Plaintiff's access to the Website.

iv.    Defendant's internal records confirm that Plaintiff accessed the Website on August 25, 2020 and purportedly show that Plaintiff "was able to successfully navigate the Website and add items to his cart . . . .but did not attempt to complete a purchase" (Cramer Declaration at ¶¶ 7-9), and any discovery to determine (i) how exactly Defendant's records demonstrate these facts, (ii) what Defendant's records demonstrate concerning any visit to the Website by Plaintiff other than the single August 25, 2020 date identified by Mr. Cramer, or (iii) what Defendant's records

demonstrate concerning Plaintiff's allegation that "the [W]ebsite was designed to gray out the main screen to present the 'shopping bag' screen," which caused the information from the main screen to be read aloud and thereby "[b]arr[ed] Plaintiff from completing his purchase transactions."  Amended Complaint at ¶27.

v.    Defendant's records "[c]onfirm that [Plaintiff] was able to successfully navigate the Website and add items to his cart" and "[d]o not show that [Plaintiff] received any error messages, or that he attempted to access the 'help' link which appears on every page of the Website" (Cramer Declaration at ¶10), and any discovery as to how exactly Defendant's records demonstrate these facts, or whether Defendant's records demonstrate that the 'help' link was, in fact, accessible to Plaintiff.

vi.   Defendant's records concerning Plaintiff's August 25, 2020 visit "suggest that his on-site behavior would not have triggered the coupon" (Cramer Declaration at ¶12), and any discovery as to how exactly Defendant's records suggest that Plaintiff's on-site behavior would not have triggered the coupon.

vii.  The fact that "[v]isitors who are new to the Website, including those with perfect vision, will occasionally experience problems with site functionality," and that "Defendant typically responds to 50 customers seeking help with the Website in a given week" (Cramer Declaration at ¶11), and any discovery to determine the exact nature of the "problems with site functionality" attested to by Mr. Cramer, whether the same "problems" are shared equally by blind and sighted consumers, the visual abilities of the "50 customers" to which Defendant typically respond in a given week, the nature of such responses, or whether Defendant's responses to visually impaired

customers result in a successful transaction on the Website.

Similarly, Plaintiff has not yet conducted discovery concerning the matters attested to by Ms. D'Intino, Defendant's expert, including, without limitation, the exact identity of the "product[s] that interest[ed] Ms. D'Intino" that for which she purported to have successfully accessed information, added to her cart and purchased (D'Intino Declaration at ¶5) and whether such products are presented on the Website in a different way than the products with which Plaintiff encountered the Access Barriers.

Defendant has not met its burden on summary judgment and genuine issues of material fact exist.   In the alternative, and since Plaintiff has not yet been afforded an opportunity to conduct the discovery necessary to build a full and complete factual record, this matter is not yet ripe for a summary judgment determination, and this Court should defer the determination of Defendant's motion until Plaintiff has had the opportunity to take discovery and rebut the motion.  *See, e.g., United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, No. 12-CV-4425 (MKB), 2020 U.S. Dist. LEXIS 122747, at *45 (E.D.N.Y. July 13, 2020) (Noting that "The Second Circuit has held that when a party advises the court that it needs discovery to defend against a motion for summary judgment, 'the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion'") (*citing Halebian v. Berv*, 548 F. App'x 641, 646 (2d Cir. 2013)).

    iii.   <u>Because Defendant has Failed to Make the Requisite Showing under Rule 56, Defendant's Arguments Fail.</u>

At the very least, because Defendant's jurisdictional challenge is heavily intertwined with the merits of the case, the Court is required to analyze Defendant's Motion to Dismiss under a Rule 56 summary judgment standard.  *See, e.g.*, *Takeda Chem. Indus.*, 329 F. Supp. 2d 394, 402 (*citing*

*London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999).  When applying this standard, it is clear Defendant has failed to meet the necessary showing to obtain summary judgment in its favor.

Under a summary judgment standard, Defendant, as movant, "bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *Segarra v. Delta Airlines, Inc.*, 2020 WL 3127879, at *2 (S.D.N.Y. June 12, 2020).  Defendant fails out of the gate.

A simple review of the "Factual Background" section of Defendant's Memorandum in support of its Motion to Dismiss demonstrates that Defendant attempts to use the extrinsic evidence to establish factual assertions in direct contradiction to explicit pleadings in the Amended Complaint. The table below demonstrates how Defendant improperly relied on extraneous evidence to counter the Complaint's well-pled allegations:

| Assertions in Defendant's "Factual Background" section of Def. Mem.  based on extrinsic evidence | Allegations in the Amended Complaint |
|---|---|
| "none of the alleged programming errors could have impeded Plaintiff's access to the Website" (Def. Mem. at 3) | "The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website, presently and in the future." (Amended Complaint at ¶30) |
| "Plaintiff did successfully access the Website" (Def. Mem. at 4) | "During Plaintiff's visits to the Website, the last occurring in August 2020, Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods and services of the Website." (Amended Complaint at ¶26) |
| Plaintiff "added three items to his shopping cart but did not attempt to complete a purchase" (Def. Mem. at 4) | "once Plaintiff did place certain items into his shopping bag, he was unable to access key information about the products, as the website |

| | |
|---|---|
| | was designed to gray out the main screen to present the "shopping bag" screen. Once that occurs/occurred, the information located within the shopping bag was not recognized by Plaintiff's screen reader, but only the information from the main screen was read aloud, barring Plaintiff from completing his purchase transactions" (Amended Complaint at ¶27) |
| "the Website is accessible with a screen reader and keyboard" and "JAWS or NVDA screen reader users of average proficiency are able to consider product descriptions and prices, select a product, add the product to the shopping cart/bag, review cart content, review the order and successfully check out" (Def. Mem. at 4) | "Plaintiff was unable to understand the price of the items he put in the 'shopping bag' because the option to add the products to the bag was mislabeled and unable to be interpreted with the screen reader"<br><br>"Plaintiff was unable to understand the price of the items he put in the 'shopping bag' because the option to add the products to the bag was mislabeled and unable to be interpreted with the screen reader" (Amended Complaint at ¶27)<br><br>"once Plaintiff did place certain items into his shopping bag, he was unable to access key information about the products, as the website was designed to gray out the main screen to present the 'shopping bag' screen. Once that occurs/occurred, the information located within the shopping bag was not recognized by Plaintiff's screen reader, but only the information from the main screen was read aloud, barring Plaintiff from completing his purchase transactions" (Amended Complaint at ¶27)<br><br>"[the Website] did not properly label the product details and these details could not be understood by the screen reader. Plaintiff was unable to understand key information about the products he sought to purchase, including the nutritional facts of the products" (Amended Complaint at ¶27) |

| | |
|---|---|
| | |

As demonstrated, there clearly exists a genuine issue of material fact on the basis of this alone.  However, the genuine issue of material fact is further strengthened by when considering Plaintiff's declaratory evidence.  As demonstrated by the Declaration of Robert D. Moody annexed as an exhibit to this Memorandum, despite Defendant's contention that "the Website, including its home, category, product, shopping cart and checkout page are periodically tested for accessibility and compliance with WCAG 2.1" (*see* Def. Mem. at 2), the Website still did not meet the Web Content Accessibility Guidelines version 2.1 AA as of February 18, 2021.  *See* Moody Declaration at ¶9.  Further, contrary to Defendant's contention that "the very barriers Plaintiff complained of have been remediated" (*see* Def. Mem. at 9-10), Mr. Moody attests to the fact that many of the alleged Access Barriers still existed as of February 18, 2021, including the following:

- A promotional "Saving Coupon $5 off" coupon is inaccessible by screen-reading software, as there is no indication on the screen-reader that a pop-up is on the screen (stated differently, screen-reading software is unable to interpret the pop-up).

- The Website does not allow a user using screen-reading software to properly utilize the "shopping bag" feature. Specifically, the option to add products to the shopping bag is mislabeled and unable to be interpreted by screen-reading software.

- Once items are placed into the shopping bag, a user using screen-reading software is unable to access key information about the products, as the Website is designed to gray out the main screen to present the "shopping bag" screen. Once that occurs, the information located within the shopping bag is not recognized by the screen-reading software, and only the information from the main screen is read aloud; and

- The Website does not properly label the product details and these details cannot be understood by screen reader, which leads to a lack of understanding of key information about the products offered for purchase, including the nutritional facts of the products.

*See* Moody Declaration at ¶10-11.

Given this evidence, Defendant's arguments are diffused.  *First*, despite Defendant's assertion that "[a]ny barriers that may have prevented Plaintiff from accessing the Website prior to filing the Complaint no longer exist, and Plaintiff's claim for injunctive relief is moot" (Def. Mem. at 9), Plaintiff has presented evidence demonstrating that to not be the case.  Accordingly, there exists an issue of material fact as to the mootness argument.

*Second*, although Defendant attempts to argue that Plaintiff cannot plead a past injury by challenging the legitimacy of Plaintiff's allegations concerning the barriers to use the promotional coupon, to understand the price and product details and other descriptive information on the Website, and to properly use the Website's "shopping bag" feature (Def. Mem. at 12), these barriers are supported by the evidence presented by Plaintiff.  Accordingly, there exists an issue of material fact as to Plaintiff's past injury.

*Third*, while Defendant claims Plaintiff cannot establish a threat of repeated injury due to its expert's purported experience with the Website and that Defendant allegedly conducts periodic testing of the Website to ensure it is accessible to screen reader users (Def. Mem. at 13), Plaintiff's evidence has established that, not only is there a threat of future repeated injury, but many of the alleged Access Barriers still existed as of February 18, 2021, just a day before the filing of this Memorandum.

Because the issues raised by Defendant are inextricably intertwined with the merits of this case, dismissal at this stage is inappropriate.  *See Takeda Chem. Indus*, 329 F. Supp. 2d 394, 402; *see also Evans*, 2017 U.S. Dist. LEXIS 135864, at *15-16. Accordingly, because there exists a genuine issue of material fact, this Court should deny Defendant's Motion to Dismiss.

**B.**  **BECAUSE DEFENDANT HAS FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR DISMISSAL OF THE FEDERAL ADA CLAIM ASSERTED BY THE AMENDED COMPLAINT, THE STATE AND NEW YORK CITY LAW CLAIMS MUST BE SUSTAINED**

For the same reasons, Defendant's attacks on Plaintiff's New York State and New York City claims also fail. On the basis of its mootness and standing challenges, Defendant next asserts that the Court must likewise dismiss the New York State and New York City claims.  Def. Mem. at 14-15.  However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action.  Accordingly, Defendant's attempts at obtaining a dismissal of the New York State and New York City claims should likewise be denied.

## VI.     CONCLUSION

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated:      Brooklyn, New York
            February 19, 2021

**COHEN & MIZRAHI LLP**

By*: /s/ Joseph H. Mizrahi*
JOSEPH H. MIZRAHI
Joseph@cml.legal
300 Cadman Plaza West, 12th Fl.
Brooklyn, New York 11201
Tel: (929) 575-4175
Fax: (929) 575-4195

*Attorneys For Plaintiff*

25